**PETRUZZI'S, INC., formerly known as Petruzzi's IGA Supermarkets, Inc., Plaintiff,**

v.

**DARLING–DELAWARE COMPANY, INC., and Moyer Packing Company, Defendants.**

Civil Action No. 86–0386.

United States District Court, M.D. Pennsylvania.

Nov. 8, 1996.

Order Denying Reconsideration August 18, 1997.

Warren Rubin, Philadelphia, PA, Larry S. Keiser, Wilkes–Barre, PA, Douglas Lang, Philadelphia, PA, Objector: Douglas Lang, Philadelphia, PA (Robzens), for Plaintiffs.

David Acker, Williams Bay, WI, for Darling Delaware Co.

David Marion, Philadelphia, PA, for Moyer Packing Co.

## MEMORANDUM

VANASKIE, District Judge.

As the concluding aspect of a class action settlement that yielded a dollar recovery to class members of approximately $400,000, counsel for the plaintiff class (hereinafter referred to as "class counsel") requests attorneys' fees in the amount of $4.7 million. Class counsel justifies this request by asserting that the full benefit of the two settlement agreements to the class was $9.4 million, a sum that class counsel claims represents the settling defendants' exposure under agreements that essentially accorded to class members 10% of their documented sales to the settling defendants over a prescribed time frame.[1] Contending that the entire "settlement fund" encompasses the settling defendants' agreement to pay fees over and above payments made to class members, and asserting that a fee of one-third of the "settlement fund" would be reasonable, class counsel arrives at a full settlement "value" of $14.1 million. Class counsel thus seeks a fee of $4.7 million, or 50% of the hypothetical $9.4 million benefit to the class.[2]

Defendant Darling, which is responsible under its settlement agreement for any fee award in excess of $1 million, agrees with class counsel that fees should be calculated on a percentage basis, but argues that the dollar multiplicand in the calculation should be the amount actually recovered by class members, $399,656.10, as opposed to the mathematically derived hypothetical "benefit" of $9.4 million. Under Darling's approach, a fee of one-third of the actual recovery would result in class counsel receiving only $120,000 for a ten year old case in which class counsel estimates that hours expended multiplied by 1995 hourly rates approximate $2.9 million.

In short, class counsel asks that I award fees that are approximately 12 times the

---

1. The settling defendants are Moyer Packing Company ("Moyer") and Darling–Delaware Company, Inc. ("Darling").

2. Moyer, which is obligated to pay the first million dollars in attorneys' fees, generally concurs with class counsel's position.

amount actually recovered by class members. Darling, on the other hand, asks that I award fees that are less than 5% of the gross value of attorneys' services purportedly expended on behalf of the class. Both positions are based on precise arithmetic calculations—plaintiff's value is essentially the product of multiplying estimated sales made to the settling defendants by the aggregate settlement payment of 10% of those sales; Darling's value is the sum of the claims that have been approved and paid. Both positions suffer from the same fundamental flaw—they ascribe unrealistic values to the benefit conferred on the class by the settlement agreements. Class counsel sought approval of a settlement that reasonably would not result in anything close to 100% recovery. By the same token, however, the benefit conferred on the class is certainly more than the amount of claims actually paid. The difficulty here is that neither party has presented any basis for determining the *reasonable* value of the settlement agreements.

■ Our Court of Appeals has held that where, as here, "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method [of calculating class counsel fees]," a district court may employ the lodestar method.[3] *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) ("*General Motors*"). Notwithstanding the arguments of counsel pertaining to the appropriateness of the percentage of recovery method, I believe that the penultimate goal of judicial determination of class counsel fees—the award of an amount that " 'is fair, adequate and reasonable,' " *Weiss v. Mercedes–Benz of North Am., Inc.,* 899 F.Supp. 1297, 1304 (D.N.J.),

*aff'd mem.,* 66 F.3d 314 (3d Cir.1995)—is best achieved in this case by using the lodestar method as the "primary determinant." *General Motors,* 55 F.3d at 821. After all, it has been recognized that "[t]he lodestar is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir. 1996).

In calculating the lodestar for this case, hours expended in connection with claims asserted against dismissed defendants Herman Isacs, Inc. and Standard Tallow Corporation will be excluded. Furthermore, in light of our Court of Appeals' pronouncement that the Supreme Court's rejection of a risk enhancement multiplier in *City of Burlington v. Dague, supra,* is applicable in the context of a class action settlement similar to that involved in this case, *General Motors,* 55 F.3d at 810, n. 27, 822, class counsel's request for a fee enhancement will be denied. On the other hand, the protracted course of these proceedings militates in favor of use of 1995 hourly rates for purposes of calculating the lodestar amount. Moreover, interest on the lodestar amount will be awarded from the date of the approval of the class action settlements, December 20, 1995, at the rate prescribed by 28 U.S.C. § 1961.

■ Unfortunately, the record in the present matter does not permit ascertainment of the lodestar. Specifically, class counsel has not identified those hours expended in pursuing claims against the dismissed defendants. Accordingly, the parties will be afforded an opportunity to supplement the record on this and on any other issue concerning the reasonableness of hours expended. If necessary, an evidentiary hearing will be conducted.[4]

---

**3.** The "lodestar" is "the product of reasonable hours times a reasonable rate." *City of Burlington v. Dague,* 505 U.S. 557, 559, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449 (1992).

**4.** Counsel for class member objector Robzens has also moved for an award of reasonable attorneys' fees. (Dkt. Entry 409.) Generally, an objector in a class action settlement proceeding is not entitled to a fee award. *See In re Domestic Air. Transp. Antitrust Litig.,* 148 F.R.D. 297, 359 (N.D.Ga.1993). Where an objector has a meaningful impact on a proceeding, however, an

award of fees is appropriate. *Id.; Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1439 (S.D.N.Y.1994), *aff'd,* 67 F.3d 1072 (2d Cir.1995). In the present action, Robzens' objection led to a sharper focus on the first proposed settlement along with its ultimate disapproval. Further, Robzens participation directly led to an increased settlement for fifty percent of the class. Clearly, Robzens has participated in a meaningful manner such that an award of counsel fees is appropriate. Therefore, Robzens will be awarded reasonable fees according to the

## BACKGROUND

On March 14, 1986, Petruzzi's, Inc., formerly known as Petruzzi's IGA Supermarkets, Inc. (hereinafter referred to as "plaintiff" or "Petruzzi's"), commenced this class action against Darling, Moyer, Standard Tallow Corp. ("Standard Tallow"), and Herman Isacs, Inc.[5] The complaint alleged that the defendants had conspired to allocate customers in the fat and bone rendering industry in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

Members of the putative class were butcher shops, supermarkets, restaurants, hotels, etc. that sold inedible fats, bones, suet, and meat trimmings ("raw material") to the defendants in the pertinent geographic area during calendar years 1977 through 1985.[6] Petruzzi's contended that although the defendants competed for *new* raw material accounts, they had agreed to refrain from soliciting accounts that had been secured or "loaded" by another defendant.

The case was vigorously litigated on both sides. A substantial number of discovery and procedural issues were contested and required court determination. During the years of ongoing litigation the parties engaged in extensive discovery and motion practice. On July 31, 1992, the Honorable James F. McClure of this Court granted summary judgment in favor of the three defendants. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, No. 86–0386, 1992 WL 212230, 1992–2 Trade Cases (CCH) ¶ 69, 937 (M.D.Pa. July 31, 1992). In an opinion filed on July 13, 1993, the United States Court of Appeals for the Third Circuit reversed the Order of July 31, 1992 insofar as it had granted summary judgment in favor

of Moyer and Darling. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224 (3d Cir.1993). As to Standard Tallow, however, our Court of Appeals concluded that plaintiff had failed to present evidence sufficient to withstand its summary judgment motion. *Id.* at 1241.[7] On November 29, 1993, the Supreme Court denied the Petition for Writ of Certiorari that had been filed on behalf of Moyer and Darling. *Moyer Packing Co. v. Petruzzi's IGA Supermarkets, Inc.*, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993).

On remand, plaintiff was authorized to provide notice to members of a class certified under Federal Rule of Civil Procedure 23(b)(3).[8] The notice approved by Order dated January 12, 1994 informed members of the class of their right to "opt out" of the class. Of the approximately 1,250 class members, only 21 elected to be excluded from the class.

On March 2, 1994, this case was reassigned to me. Trial was scheduled for October, 1994. During the intervening period the parties were to complete expert witness discovery and file motions in limine.

A court-conducted settlement conference was convened on June 6, 1994. Negotiations between plaintiff and Moyer continued after that date. In September, Plaintiff and Moyer indicated that a settlement between them was likely. A final Settlement Agreement was executed by counsel for Plaintiff and Moyer on September 29, 1994.

Essentially, Moyer agreed to provide up to $2 million in "premium certificates," which were to "be claimed by class members based on the dollar value of their sale of raw materials to Moyer within the [relevant] geo-

---

lodestar approach with no multiplier. The exact amount of such fees will be determined at a later date.

**5.** Herman Isacs, Inc. was dismissed for lack of personal jurisdiction. *See* 677 F.Supp. 289 (M.D.Pa.1987).

**6.** The relevant geographic area is comprised of a number of counties in Pennsylvania, New Jersey, and Connecticut.

**7.** The Third Circuit's opinion sets forth in great detail the factual background of this case. The

Court of Appeals' recitation of the facts of this case will not be restated here.

**8.** The class certified in this action is defined as:

[A]ll individuals, persons, proprietorships, partnerships, corporations and other entities (excluding defendants, their subsidiaries, their affiliates and co-conspirators) who are accounts of defendants and sold raw material directly to any defendant in the geographic area from January 1, 1977 to December 31, 1985.

graphic area in up to 5 of the 9 calendar years 1977 through 1985, for eleven (11%) percent of the dollar value of such sales to Moyer." The certificates were redeemable over a 36 month period "for a premium payment on new sales of raw materials to Moyer, up to 20% of the actual dollar value of such sales of raw materials." Moyer also agreed to pay up to $1 million in cash for attorneys' fees, as approved by the Court, in six installments over a 36 month period.

Only one class member, Robzens' Inc. ("Robzens"), objected to the proposed partial settlement. Following a hearing that was conducted on December 28, 1994, I declined to approve the partial settlement. *See Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 880 F.Supp. 292 (M.D.Pa. 1995). The principal reasons for disapproving the partial settlement were the absence of evidence to reasonably assess the settlement's value to class members and the fact that only Moyer's accounts, approximately 50% of the class, would receive premium certificates, but all class members would be required to release Moyer from any further liability. In expressing concern for the absence of evidence pertaining to the actual value of the premium certificates, I noted:

> It is also important to be able to estimate the actual value of the settlement in order to assess the appropriateness of making up to $1.2 million in cash available for attorneys' fees and expenses. If, for example, the actual value of the premium certificates is only 10% to 20% of their face value, it would seem inappropriate to make available to class members approximately $200,000 to $400,000 while providing $1 million for attorneys' fees and reimbursement of up to $200,000 in litigation expenses.

*Id.* at 298.

The reaction of Moyer and plaintiff to the disapproval of the partial settlement was to re-negotiate the terms of an amicable resolution of Moyer's involvement in this matter. A settlement agreement was reached on February 28, 1995, the essential terms of which were as follows:

—Moyer agreed to pay class members 5% of the dollar value of their sales of raw materials to Moyer *and* Darling within the relevant geographic area in up to four of the nine calendar years 1977 through 1985, subject to a cap of $2 million.

—Class members were required to submit verifiable settlement claims documenting their sales in order to be paid.

—Moyer agreed to pay up to $1 million for attorneys' fees, as approved by the Court, and up to $200,000 for litigation expenses.

Preliminary approval was given to this settlement on March 2, 1995.

Thereafter, settlement discussions with Darling proceeded in earnest. Finally, on September 14, 1995, plaintiff and Darling executed a Settlement Agreement, the essential terms of which were as follows:

—Darling agreed to pay 5% of the dollar value of class members' documented sales of raw materials to Darling *and* Moyer within the relevant geographic area in up to 4 of the 9 calendar years 1977 through 1985, with no payment cap.

—Class members were required to submit settlement claims of sales made that were subject to verification as a condition of being paid.

—Darling agreed to pay all attorneys' fees above $1 million as may be approved by the Court and to pay 50% of litigation expenses, but Darling's obligation in that regard was not to exceed $200,000.

By Order dated October 12, 1995, preliminary approval was given to the Darling settlement.

On December 20, 1995, I conducted a hearing to consider approval of the settlements of the class action claims and class counsel's request for attorneys' fees and costs. Following the hearing, the settlements were approved and final judgment accordingly entered. (*See* Dkt. Entry 425.) In a separate order dated December 20, 1995, I found that class counsel's unreimbursed costs of $162,-453.41 were necessary, reasonable and proper, and that counsel was entitled to an award of those costs. (Dkt. Entry 424.)[9] A ruling

---

9. I ordered costs to be paid in accordance with

the terms of the settlement agreements entered

on class counsel's request for fees, however, was deferred. (*See* Tr. of 12/20/95 Hearing (Dkt. Entry 435) at 71–74.)

By letter dated January 22, 1996, class counsel provided a schedule of the claims filed by class members. Of the approximate 1,200 class members, less than 40 submitted settlement claims, the aggregate value of which was roughly $507,000. (*See* Dkt. Entry 431.) When the settlement claims were resolved, payments totaling $399,656.10 to thirty class members was ultimately approved. (Order of Aug. 21, 1996, Dkt. Entry 444.) In addition, the Order of August 21, 1996 authorized reimbursement of supplemental class counsel expenses in the amount of $16,855.34. On October 15, 1996, plaintiff certified compliance with the August 21, 1996 Order that had authorized distribution to class members and reimbursement of supplemental expenses.

## DISCUSSION

■ A thorough judicial review of fee applications is required in all class action settlements. *General Motors*, 55 F.3d at 819. The award of reasonable attorney's fees is within the discretion of the district court. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Silberman v. Bogle*, 683 F.2d 62 (3d Cir.1982); *Lindy Bros. Builders, Inc. of Phi-*

*la. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir.1976) (*Lindy II*). "A district court may not set attorney's fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir.1996).

■ Generally speaking, attorneys' fees may be awarded either on a lodestar or percentage of benefit basis. The lodestar method is typically employed in the statutory fee shifting framework. The percentage of benefit approach is usually appropriate where the efforts of counsel have generated a "common fund" from which the plaintiffs and counsel are to be compensated. *General Motors*, 55 F.3d at 821.

■ Statutory fee shifting provisions reflect congressional intent "to encourage private enforcement of statutory substantive rights, be they economic or non-economic, through the judicial process." *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 15 (Oct. 8, 1985), *reprinted at* 108 F.R.D. 237, 250. The "lodestar" method typically used in the statutory fee shifting context calculates fees by multiplying the number of hours reasonably expended by the hourly rate appropriate for the geographic region and the lawyer's experience. *General Motors*, 55 F.3d at 819 n. 37.[10] The Supreme

---

into between plaintiff and defendants. Each settling defendant was to pay fifty percent of the costs ($81,226.70).

**10.** " 'The most useful starting point for determining a reasonable attorney's fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)); *see also Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community. *Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11 (1984); *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir.1996); *Washington*, 89 F.3d at 1035; *Student Public Interest Research Group of N.J., Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436, 1448 (3d Cir.1988); *Stewart v. Weis Markets, Inc.*, 890 F.Supp. 382, 397 (M.D.Pa.1995). The prevailing party has the burden of proving that the requested hourly rate meets this standard. *Blum*, 465 U.S. at 895 n.

11, 104 S.Ct. at 1547 n. 11. In this case, no party has contested the reasonableness of class counsel's hourly rates.

However, "the court cannot properly fix attorneys' fees merely by multiplying the hourly rate for each attorney times the number of hours he worked on the case...." *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) (*Lindy I*). Before an attorney's services can be valued the court must determine what services are compensable. Hours expended in pursuit of losing claims or defendants who are dismissed are generally not compensable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir.1990). Moreover, the fee applicant is expected to exercise "billing judgment" with respect to hours claimed. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993).

Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee" in statutory fee-shifting cases. *Dague*, 505 U.S. at 562, 112 S.Ct. at 2641 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). It has also stated that it has " 'generally turned away from the contingent-fee model'—which would make the fee award a percentage of the value of the relief awarded in the primary action—'to the lodestar model.' " *Id.* at 566, 112 S.Ct. at 2643 (quoting *Venegas v. Mitchell*, 495 U.S. 82, 87, 110 S.Ct. 1679, 1682–83, 109 L.Ed.2d 74 (1990)).

In a case resulting in a common fund for the benefit of a plaintiff class, a court may exercise its equitable powers to award attorneys' fees out of the fund. *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir.1988) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–58, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975)), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The Supreme Court has long recognized that "a litigant who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs," *Skelton*, 860 F.2d at 252 (quoting *Third Circuit Task Force*, 108 F.R.D. at 237), and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993); *see also Boeing*, 444 U.S. at 478, 100 S.Ct. at 749; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164, 59 S.Ct. 777, 778–79, 83 L.Ed. 1184 (1939); *Sala v. National R.R. Passenger Corp.*, 128 F.R.D. 210, 212 (E.D.Pa.1989). In common fund cases a district judge can award attorneys' fees as a percentage of the fund recovered. *General Motors*, 55 F.3d at 822; *see also Blum*, 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16 (1984); *In re SmithKline Beckman Corp. Securities Litig.*, 751 F.Supp. 525 (E.D.Pa.1990). No general rule exists for determining the appropriate percentage. Fee awards have ranged from fifteen to forty-five percent of the settlement fund. *Weiss*, 899 F.Supp. at 1304; *SmithKline*, 751 F.Supp. at 533; *see also Sala*, 128 F.R.D. at 214; *In re TSO Fin. Litig.*, No. 87–7903, 1989 WL 80316 (E.D.Pa. July 17, 1989). It has been noted that "the normal range [for attorneys' fees in] common fund securities and antitrust suits is between 20 and 30 percent." *See In re GNC Shareholder Litig.*, 668 F.Supp. 450, 452 (W.D.Pa.1987) [11]

"Judges [have] employed a variety of factors to set the reasonable percentage; the most common factor [has been] 'the size of the fund or the amount of benefit produced for the class.' " *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F.Supp. 445, 457 (E.D.Pa.1995) (quoting *Third Circuit Task Force*, 108 F.R.D. at 242). Courts have also considered the following factors: the range within which attorneys' fees usually fall; counsel's experience in class action litigation; counsel's competency; whether counsel acted in the class' best interest; the stage of the litigation at which the settlement was obtained; the novelty of the issues; and the factors unique to the particular case. *Id.* at 462.

The settlement agreements in the instant matter present features that are found in both statutory fee and common fund cases. For example, the fee award will not be taken from the class members' actual recovery, but instead will be borne directly by the settling defendants. Thus, the principal rationale underlying common fund awards—"the class would be unjustly enriched if it did not com-

---

**11.** The percentage of common fund approach has been criticized as resulting in exorbitant fee awards. *Third Circuit Task Force*, 108 F.R.D. at 242. It was because of the difficulty in finding an appropriate percentage of the fund that the lodestar approach became popular. The lodestar approach emerged in the *Lindy I* decision. 487 F.2d at 161. The lodestar was seen as a "reasonably objective basis for valuing an attorney's services." *Id.* at 167. *See also Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939. However, the lodestar approach has also been criticized, leading to the return in popularity of the percentage of benefit method, especially in common fund cases. *See Third Circuit Task Force*, 108 F.R.D. at 246–56.

pensate the counsel responsible for generating the valuable fund bestowed on the class," *General Motors*, 55 F.3d at 821—is absent here.

On the other hand, the "economic reality" is that the agreement to pay verified settlement claims of class members as well as counsel fees yields a mathematically calculable amount that can be regarded as "a constructive common fund." *Id.* at 820. Indeed, "[c]ourts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund." In *General Motors, supra,* our Court of Appeals suggested that the preferred "primary determinant" of an award of attorneys' fees in a "constructive" common fund case is the percentage of recovery method. *Id.* at 821.

A key factor distinguishing the matter *sub judice* from *General Motors* is that a settling defendant in this case contests the fee award, whereas General Motors did not. The paradigmatic common fund case involves a situation where a defendant has no interest in the allocation of the settlement fund between class members and class counsel. Judicial determination of a percentage of recovery ensures an adequate recovery for both class counsel and class members. But where class counsel and the settling defendant dispute the fee award, the lodestar method that is typically employed in "conventional bipolar litigation" appears more appropriate. *Id.* at 821. Moreover, because the class members' recovery is not affected by the fee award, this case does not present the classic conflict of interest between class counsel and class members that animates the percentage of recovery method. *Id.*

Perhaps most importantly, the difficulty in ascribing a reasonable value to the settlement militates against use of a percentage method. The difficulty in assigning a value to this settlement is exacerbated by the absence of controlling authority on whether the percentage of attorneys' fees is to be paid on the basis of the actual recovery or on the basis of the potential benefit conferred by the settlement.

In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Court addressed the issue of whether attorneys' fees could be assessed against the unclaimed portion of a judgment. In affirming the award of counsel fees from the entire judgment, the Court explained:

> In this case, [class counsel] have recovered a determinate fund for the benefit of every member of the class whom they represent.... To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorneys fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorneys fees to the same extent that he can share the recovery. Since the benefits of the class recovery have been 'traced with some accuracy' and the costs of recovery have been 'shifted with some exactitude to those benefitting,' we conclude that the attorneys fee award in this case is a proper application of the common-fund doctrine.

*Id.* at 479–81, 100 S.Ct. at 749–50. This rationale has been applied to justify an award of counsel fees in a class action settlement in which claims asserted did not exhaust the full settlement fund. *See Fickinger v. C.I. Planning Corp.*, No. 81–951, 1989 WL 146695 (E.D.Pa., Dec.1, 1989).[12]

---

**12.** The court in *Fickinger* initially ruled that the fee award should be limited to a percentage of the amount actually recovered by class members. *See Fickinger v. C.I. Planning Corp.*, 646 F.Supp. 622, 635–37 (E.D.Pa.1986). On reconsideration,

Judge Shapiro ruled that the fee should be awarded on the basis of the maximum recoverable, explaining:

> The court's award of fees did not properly consider the benefit conferred on nonclaiming

*Boeing,* however, specifically declined to "decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorneys' fees under the common-fund doctrine." 444 U.S. at 479 n. 5, 100 S.Ct. at 750 n. 5. The settlement agreements in this matter essentially provided security against potential claims. For example, Moyer agreed to place $2 million in escrow, with any escrowed funds remaining after payment of claims returned to Moyer. *Boeing* simply did not address the propriety of using the maximum payable, as opposed to the dollar amount of an actual fund within the court's control, for purposes of calculating class counsel fees.

It must also be noted, however, that there is no clear authority for the proposition that the fee should be awarded solely on the basis of the actual amount recovered by class members. In *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.,* 736 F.Supp. 1007 (E.D.Mo.1990), the court *apparently* based the fee award on the value of verified claim forms submitted by class members.[13] The court, however, did not address the question of whether the fee should be based on the maximum exposure to the settling defendant. Thus, *Chrysler Motors* does not provide any rationale for basing the percentage award on the actual amount recovered by class members.

*General Motors* directs that if fees are to be awarded on a percentage basis "some reasonable assessment of the settlement's value" must be made. Settlements of the type involved in this case are rarely ascribed a value that is equivalent to the face value of *potential* claims. For example, in *Weiss,* 899 F.Supp. at 1304, the court valued a settlement that called for a $100 million fund for

coupon redemption to be approximately $75 million, and awarded 15% of that amount. In this case, class counsel has assigned a face value to the settlement that is 23.5 times greater than the actual recovery. Class counsel derived a value of $9.4 million as the class benefit by using information showing that Darling purchased approximately $35 million of rendering materials in the relevant geographic area in 1984 and multiplying that figure by four to determine Darling's aggregate purchase over a four year period. To this amount was added the top four years of Moyer's purchases, which totaled $7,559,287. This sum was multiplied by five percent to determine the potential class recovery from Darling. The resulting number is $7,434,280. Because Moyer's liability was limited to $2 million, class counsel claimed a total potential benefit to the class of $9.4 million. But "[t]here is virtually a statistical certainty that not all class members will file statements or proofs of claim when such filing is a precondition to sharing in a common recovery." 2 Newberg on Class Actions § 10.14 (2d ed.1985). A table accompanying Newberg's treatise indicates that response rates are often very small, and rarely exceed 50%. In this case, class counsel had some basis for projecting claims to be made because settlement claims had been submitted in connection with the first Moyer settlement agreement. Yet class counsel never attempted to forecast a reasonable response rate for this settlement. While counsel should not be penalized because class members fail to exercise their rights, class counsel should not claim a benefit value that simply does not exist. Clearly, the realistic value of the settlement in this case does not remotely approach class counsel's estimate.

class members. Counsel should not be penalized because members of the class failed to exercise their vested right to collect from the fund.

*Fickinger,* 1989 WL 146695, at *3. It should also be noted that in *Fickinger* the settling defendant had agreed to the establishment of a settlement fund of $600,000, from which fees not to exceed $135,000 were to be paid. The lodestar amount was approximately $235,000. Defendant did not object to the payment of $135,000 in fees ultimately awarded in that case.

13. In *Chrysler Motors,* the settlement obligated the defendant to establish a fund in the amount of $16,375,000, from which class members submitting verified were to be paid $500 each. Of the 43,556 class members, verified claims of 27,472 members were received, yielding a value of $13,736,000. The court held that for purposes of an *attorneys' fee award the settlement fund would be valued as of the date of the court's order authorizing a distribution to class members whose claims had been validated.* The court awarded a fee of 17.5% of the fund.

In *General Motors,* Judge Becker observed that the percentage of recovery method "rewards counsel for success and penalizes it for failure." 55 F.3d at 821. Darling's position is that the small recovery that resulted here reflects a lack of success on class counsel's part. But in a settlement of the nature presented here, the limited actual recovery does not necessarily reflect the "failure" of class counsel. The settlement at issue was achieved approximately ten years after the alleged conspiracy to restrain trade ended. It is evident that a number of class members either no longer exist or are not in business.[14] It is also evident that records to substantiate sales dating back to 1977 may have been lost, discarded, or destroyed.[15] Class counsel should not be penalized because the passage of time in this protracted litigation reduced the size of the class and made it probable that the dollar expenditure by the settling defendants would be substantially less than their hypothetical exposure.

*General Motors* also established that the court has discretion in determining whether to use the lodestar method in the "constructive common fund" setting. 55 F.3d at 821. This position is consistent with the rulings of a number of other courts of appeals, which "have recognized that the appropriate method for use in common fund cases depends upon the circumstances of each case." *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993); *see, e.g., Johnston v. Comerica Mortgage Corp.,* 83 F.3d 241, 246 (8th Cir.1996); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 566 (7th Cir.1994); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990). "The lodestar rational 'has appeal where, as here, the nature of settlement evades the precise evaluation needed for the percentage of recovery method.'" *In re Chambers Dev. Securities Litig.,* 912 F.Supp. 852, 864 (W.D.Pa.1995).

In *Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019 (5th Cir.1983), a jury verdict in a class antitrust action had a treble value of approximately $2 million. Claims asserted against the judgement, however, totaled only $17,482. The court awarded the lodestar amount of $246,517, rejecting the defendant's contention that the award was disproportionately large in relation to the actual recovery and class counsel's contention that the award was disproportionately small in relation to the potential class recovery. *Id.* at 1032; *see also Johnston,* 83 F.3d at 246 (given difficulty in estimating value of settlement, use of lodestar approach was not an abuse of discretion). The Fifth Circuit ruled that the district court's use of an unenhanced lodestar to award fees to the Greenhaw class counsel reflected a sound exercise of discretion.

Having carefully considered the arguments of counsel and studied the applicable precedents, I am firmly convinced that the lodestar approach is preferable where, as here, there is a substantial divergence between the actual recovery and the potential benefit; the benefit is not reasonably calculable; and the defendant who is obligated to pay the fee contests class counsel's claim. By requiring payment of an unenhanced lodestar as counsel fees in the context of this hybrid common fund settlement, defendants are not rewarded for the effects of delay. Moreover, the lodestar approach affords certainty to both sides during settlement negotiations by enabling the parties to assess the defendants' probable liability for attorneys' fees. A settling defendant can then estimate both its probable payments to class members as well as its payment of counsel fees in determining whether to settle or proceed to trial. Judicial scrutiny of the settlement and determination of the fee award in an adversarial setting assure that the class has not been "sold out" by counsel for an exorbitant fee. Class counsel are assured of "presumptively reasonable" compensation in negotiat-

---

**14.** Unfortunately, class counsel did not state the number of class members who could not be served with the class settlement notice approved in this case.

**15.** In this regard, six claims were rejected based upon the absence of supporting documentation. (*See* Motion of Plaintiff for Order Approving Final Distribution of Settlement Funds (Dkt. Entry 443), Schedule "B.")

ing in a difficult case a settlement based upon the presentation of verified claims by class members.

■ Contrary to class counsel's arguments, I find that use of a risk enhancing multiplier is foreclosed by *General* Motors. As recognized in *Lake v. First Nationwide Bank,* 900 F.Supp. 726 (E.D.Pa.1995):

> In *City of Burlington v. Dague,* ... the Supreme Court ruled that a contingency multiplier based on the risk of the plaintiff's success could not be used to increase the lodestar under two federal fee-shifting statutes. This prohibition has subsequently been extended to common fund cases, making the likelihood that the plaintiff would not succeed irrelevant for purposes of enhancing the lodestar.

*Id.* at 736; *see also* Hirsch and Sheeley, *Awarding Attorneys' Fees and Managing Fee Litigation* at 71 (Federal Judicial Center 1994) ("In light of [the Supreme Court's] clear desire to facilitate administration and avoid arbitrariness, it seems likely that the Court would reject risk enhancements in common fund cases").

Even if a risk enhancement multiplier was not foreclosed, I would not award an upward adjustment in this case. "[R]isk multipliers tend to penalize the parties with the strongest defenses." *Skelton,* 860 F.2d at 253. The settlements negotiated in this case reflected the weakness of plaintiff's case. Class counsel should not be rewarded simply because *some* settlement was achieved. At all times, the settling defendants recognized that the amount they would be required to pay to the settling class would be substantially less than the value ascribed to the settlements by class counsel. At no time did the settling defendants express a willingness to establish a multi-million dollar fund that would be divided among class members and class counsel. On the contrary, efforts to negotiate a lump sum settlement were met with stubborn opposition. The settling defendants insisted on a claims-made settlement, obviously relying upon the "statistical certainty" that only a fraction of class members would submit verifiable claims. While *some* settlement may have been preferable to *no* settlement, the result achieved militates against an upward adjustment in the lodestar.

■ It is, however, appropriate to calculate the lodestar based upon current rates to compensate for the fact that services have been rendered over an 11 year period.[16] *See Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469–70, 105 L.Ed.2d 229 (1989). It is also appropriate to award interest from the date that judgment was entered in this case, December 20, 1995, to the date of the attorneys' fee award. In calculating the lodestar, hours expended with respect to defendants who have been dismissed from this action will not be compensable. *See Rode v. Dellarciprete,* 892 F.2d 1177, 1185 (3d Cir. 1990); *see also Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). Moreover, the fee application must be scrutinized to "exclude from this initial fee calculation hours that were not 'reasonably expended,' " including, "excessive, redundant, or otherwise unnecessary" work. *Id.* at 434, 103 S.Ct. at 1939–40. Because the parties have not addressed these issues, time will be afforded to supplement the record and an evidentiary hearing, if necessary, will be conducted.

## CONCLUSION

This Court is charged with the task of determining a fair, adequate and reasonable fee. *Weiss,* 899 F.Supp. at 1304. In making this determination, interests in the administration of justice must be considered. *See Fickinger,* 646 F.Supp. at 633. In this regard, the amount of the fee in relation to the actual recovery realized by the class is indeed a pertinent consideration. But so too are the efforts of class counsel over a protracted period in confronting a difficult adversary. While "common fund awards are not intended to reward a Don Quixote who tilts at windmills no matter how noble the motives or how extensive the efforts," *Fick-*

---

**16.** By "current," I refer to the 1995 rates set forth in plaintiff's petition for attorneys' fees.

(Dkt. Entry 405.)

*inger*, 646 F.Supp. at 637, counsel who wrangle a judicially-approved settlement should be fairly compensated for their labor. "Presumptively reasonable" compensation is afforded through the lodestar method.[17] Accordingly, the parties will be directed to supplement the record with respect to the calculation of the lodestar in this case, consistent with the principles set forth above.

## ORDER DENYING RECONSIDERATION

By Memorandum and Order filed on November 8, 1996 (Dkt. Entry 448), I held that class counsel's attorneys' fees would be determined through use of the lodestar method—not the percentage of common fund method advocated by counsel. (*Id.*) Because the record had not been adequately developed to calculate a reasonable lodestar amount, counsel were directed to supplement the record by filing briefs concerning the lodestar calculation. (*Id.* at 22–23.) Notwithstanding the November 8th opinion's comprehensive treatment of the issue of whether class counsel should receive one-third of a phantom common fund of more than $14 million, as opposed to an award of fees based upon the hours reasonably expended in this protracted case, class counsel moved for reconsideration of the decision to award fees on the lodestar basis.[1]

Despite class counsel's assertion to the contrary, this request for reconsideration trots forth the same arguments which were considered and rejected in the November 8th decision. Thus, class counsel has not satisfied the stringent requirements for reconsideration. Moreover, I am firmly convinced that the November 8th ruling is grounded on sound authority. Indeed, awarding fees on the basis of a hypothetical "common fund" in the percentage sought by class counsel would be a perverse result (class counsel would recover almost $5 million in fees on a settlement that produced an actual recovery of about 8.5% of that amount). Accordingly, the reconsideration request will be denied.[2]

As indicated in the November 8th opinion, class counsel will be awarded fees according to the lodestar approach without application of any "risk" multiplier. The parties agree that the value of all hours expended by class counsel totals $2,889,160.[3] Of this amount, time entries that pertained to matters relating only to Standard Tallow Co., Inc. ("Standard Tallow") and Herman Isacs, Inc. ("Isacs"), who were dismissed from this ac-

---

**17.** I generally concur with Chief Judge Cahn's comprehensive treatment of the attorneys' fee issue in *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F.Supp. 445 (E.D.Pa.1995). Where there is a specific settlement fund or a precise calculation of the benefit to the plaintiff class, I believe that his "modified lodestar analysis," under which a lodestar range is used to select an appropriate percentage of recovery to calculate the fee, is a sound approach. But without a basis for calculating the benefit to the plaintiff class with some precision, the default method must be the lodestar.

**1.** Actual recovery to class members was only about $400,000. One of the settling defendants, Darling Delaware Co., Inc. ("Darling"), argued that class counsel fees should be limited to a percentage of actual recovery. Class counsel, on the other hand, argued that the "common fund" in this case was the sum of potential liability of the settling defendants if *all* class members submitted verifiable claims *plus* the value of the settling defendants' obligation to pay counsel's fees. The hypothetical value of settlement claims if 100% of the class members presented verifiable claims was $9.4 million. Class counsel contended that a fee of one-third was reasonable, thereby increasing the "common fund" to $14.1 million.

Class counsel's fee request thus totaled $4.7 million. This amount is nearly 12 times the sum that the settling class actually received and is nearly twice the value of hours expended by class counsel.

**2.** The filing of the motion for reconsideration, which incorporated by reference the voluminous briefs and letter briefs filed before November 8th, resulted in this ultimate award of fees being delayed substantially. This Court, which has been operating at 50% of its authorized judgeships, is inundated with all varieties of matters. When any motion is filed, even a motion for reconsideration, it is generally taken up in its order of presentation. Moreover, class counsel's failure to address in a meaningful manner the issues pertinent to the lodestar calculation has required a substantial expenditure of judicial resources, further delaying the final award of fees. I am aware that class counsel has barraged my staff with phone calls inquiring about the status of this matter. I consider such conduct to be completely inappropriate.

**3.** In accordance with the November 8th opinion, this value is based on class counsel's 1995 hourly rates.

tion, totaled $254,495. Of this amount, class counsel will be credited for certain hours which were expended in preparing for and taking the depositions of five Standard Tallow employees, which results in a figure of $25,473.75. Class counsel will also be credited for all hours that are explicitly attributable to matters pertaining to the settling defendants, Moyer Packing Co. ("Moyer") and/or Darling prior to July, 1993, by which time Standard Tallow was no longer a party, amounting to $296,152.25. Class counsel will also be fully compensated for all hours expended since July, 1993, the value of which is $666,484.25. As to the hours expended prior to July, 1993 which cannot be allocated to any particular defendant ($1,676,028.75), a reduction of 20% will be applied to represent hours devoted solely to the pursuit of the unsuccessful claims against Standard Tallow and Isacs. This reduction for unsuccessful claims results in a compensable figure of $1,340,823 for unallocable hours. The aggregate of compensable fees under the lodestar approach is $2,324,933. To this amount, the post-judgment interest rate of 5.56% will be applied from December 19, 1995 until August 18, 1997, resulting in a final fee award of $2,544,925.

As noted in the November 8th opinion, Robzens Inc. ("Robzens") also will be awarded reasonable fees for the benefit it conferred upon the class when it objected to Moyer's first proposed settlement. Further, Robzens will also be compensated for reasonable hours expended in preparing its fee application. Finally, the post-judgment interest rate of 5.56% will be applied to the award from December 19, 1995 until August 18, 1997, which results in a final attorneys' fee and cost award to Robzens of $11,563.65.

## I. BACKGROUND

On March 14, 1986, Petruzzi's, Inc., formerly known as Petruzzi's IGA Supermarkets, Inc. (hereinafter referred to as "plain-

tiff" or "Petruzzi's"), commenced this class action against Darling, Moyer, Standard Tallow, and Isacs.[4] The complaint alleged that the defendants had conspired to allocate customers in the fat and bone rendering industry in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

Members of the putative class were butcher shops, supermarkets, restaurants, hotels, etc. that sold inedible fats, bones, suet, and meat trimmings ("raw material") to the defendants in the pertinent geographic area during calendar years 1977 through 1985.[5] Petruzzi's contended that although the defendants competed for new raw material accounts, they had agreed to refrain from soliciting accounts that had been secured or "loaded" by another defendant.

The case was vigorously litigated on both sides. A substantial number of discovery and procedural issues were contested and required court determination. On July 31, 1992, the Honorable James F. McClure of this Court granted summary judgment in favor of the three defendants. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* No. 86–0386, 1992 WL 212230, 1992–2 Trade Cases (CCH) P 69937 (M.D.Pa. July 31, 1992). In an opinion filed on July 13, 1993, the United States Court of Appeals for the Third Circuit reversed the Order of July 31, 1992 insofar as it had granted summary judgment in favor of Moyer and Darling. *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224 (3d Cir.1993). As to Standard Tallow, however, our Court of Appeals concluded that plaintiff had failed to present evidence sufficient to withstand its summary judgment motion. *Id.* at 1241.[6] On November 29, 1993, the Supreme Court denied the Petition for Writ of Certiorari that had been filed on behalf of Moyer and Darling. *Moyer Packing Co. v. Petruzzi's IGA Supermarkets, Inc.,* 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993).

---

4. Herman Isacs, Inc. was dismissed for lack of personal jurisdiction. *See* 677 F.Supp. 289 (M.D.Pa.1987).

5. The relevant geographic area is comprised of a number of counties in Pennsylvania, New Jersey, and Connecticut.

6. The Third Circuit's opinion sets forth in great detail the factual background of this case. The Court of Appeals' recitation of the facts of this case will not be restated here.

On remand, plaintiff was authorized to provide notice to members of a class certified under Federal Rule of Civil Procedure 23(b)(3).[7] The notice approved by Order dated January 12, 1994 informed members of the class of their right to "opt out" of the class. Of the approximately 1,250 class members, only 21 elected to be excluded from the class.

On March 2, 1994, this case was reassigned to me. Trial was scheduled for October, 1994. During the intervening period the parties were to complete expert witness discovery and file motions in limine.

A court-conducted settlement conference was convened on June 6, 1994. Negotiations between plaintiff and Moyer continued after that date. In September, plaintiff and Moyer indicated that a settlement between them was likely. A final Settlement Agreement was executed by class counsel and Moyer on September 29, 1994.

Essentially, Moyer agreed to provide up to $2 million in "premium certificates," which were to "be claimed by class members based on the dollar value of their sale of raw materials to Moyer within the [relevant] geographic area in up to 5 of the 9 calendar years 1977 through 1985, for eleven (11%) percent of the dollar value of such sales to Moyer." The certificates were redeemable over a 36 month period "for a premium payment on new sales of raw materials to Moyer, up to 20% of the actual dollar value of such sales of raw materials." Moyer also agreed to pay up to $1 million in cash for attorneys' fees, as approved by the Court, in six installments over a 36 month period.

Only one class member, Robzens, objected to the proposed partial settlement. Following a hearing that was conducted on December 28, 1994, I declined to approve the partial settlement. *See Petruzzi's, IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 880 F.Supp. 292 (M.D.Pa.1995). The principal reasons for disapproving the partial settlement were the absence of evidence to reasonably assess the settlement's value to class members and the fact that only Moyer's accounts, approximately 50% of the class, would receive premium certificates, but all class members would be required to release Moyer from any further liability. In expressing concern for the absence of evidence pertaining to the actual value of the premium certificates, I noted:

> It is also important to be able to estimate the actual value of the settlement in order to assess the appropriateness of making up to $1.2 million in cash available for attorneys' fees and expenses. If, for example, the actual value of the premium certificates is only 10% to 20% of their face value, it would seem inappropriate to make available to class members approximately $200,000 to $400,000 while providing $1 million for attorneys' fees and reimbursement of up to $200,000 in litigation expenses.

*Id.* at 298.

The reaction of Moyer and plaintiff to the disapproval of the partial settlement was to re–negotiate the terms of an amicable resolution of Moyer's involvement in this matter. A settlement agreement was reached on February 28, 1995, the essential terms of which were as follows:

> —Moyer agreed to pay class members 5% of the dollar value of their sales of raw materials to Moyer *and* Darling within the relevant geographic area in up to four of the nine calendar years 1977 through 1985, subject to a cap of $2 million.

> —Class members were required to submit verifiable settlement claims documenting their sales in order to be paid.

> —Moyer agreed to pay up to $1 million for attorneys' fees, as approved by the Court, and up to $200,000 for litigation expenses.

Preliminary approval was given to this settlement on March 2, 1995.

Thereafter, settlement discussions with Darling proceeded in earnest. Finally, on

---

7. The class certified in this action is defined as: [A]ll individuals, persons, proprietorships, partnerships, corporations and other entities (excluding defendants, their subsidiaries, their affiliates and co-conspirators) who are accounts of defendants and sold raw material directly to any defendant in the geographic area from January 1, 1977 to December 31, 1985.

September 14, 1995, plaintiff and Darling executed a Settlement Agreement, the essential terms of which were as follows:

—Darling agreed to pay 5% of the dollar value of class members' documented sales of raw materials to Darling and Moyer within the relevant geographic area in up to 4 of the 9 calendar years 1977 through 1985, with no payment cap.

—Class members were required to submit settlement claims of sales made that were subject to verification as a condition of being paid.

—Darling agreed to pay all attorneys' fees above $1 million as may be approved by the Court and to pay 50% of litigation expenses, but Darling's obligation in that regard was not to exceed $200,000.

By Order dated October 12, 1995, preliminary approval was given to the Darling settlement.

On December 20, 1995, I conducted a hearing to consider approval of the settlements of the class action claims and class counsel's request for attorneys' fees and costs. Following the hearing, the settlements were approved and final judgment accordingly entered. (*See* Dkt. Entry 425.) In a separate order dated December 20, 1995, I found that class counsel's unreimbursed costs of $162,453.41 were necessary, reasonable and proper, and that class counsel was entitled to an award of those costs. (Dkt. Entry 424.)[8] A ruling on class counsel's request for fees, however, was deferred. (*See* Tr. of 12/20/95 Hearing (Dkt. Entry 435) at 71–74.)

By letter dated January 22, 1996, class counsel provided a schedule of the claims filed by class members. Of the approximate 1,200 class members, less than 40 submitted settlement claims, the aggregate value of which was roughly $507,000. (*See* Dkt. Entry 431.) When the settlement claims were resolved, payments totaling $399,656.10 to thirty class members was ultimately approved. (Order of Aug. 21, 1996, Dkt. Entry 444.) On October 15, 1996, plaintiff certified compliance with the August 21, 1996 Order that had authorized distribution to class members and reimbursement of supplemental expenses of $16,855.34.

By Memorandum and Order dated November 8, 1996, the parties were advised that attorneys' fees would be determined through the use of the lodestar method as opposed to the percentage of the common fund approach. (Dkt. Entry 448.) The parties were also informed that a risk multiplier would not be used; that attorneys' fees which resulted from work done in connection with the unsuccessful claims against Standard Tallow and Isacs would be excluded from the lodestar; and that, finally, because of the protracted nature of the suit, 1995 hourly rates would be used in the lodestar formula and interest from December 20, 1995 would be added to any amount awarded.

## II. DISCUSSION

### A. Motion for Reconsideration

 The standard for determining whether to grant a motion for reconsideration is a stringent one. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *see also Dodge v. Susquehanna Univ.*, 796 F.Supp. 829, 830 (M.D.Pa.1992) (noting three possible grounds upon which a motion for reconsideration might be granted: "(1) intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice"). A mere disagreement with the court does not translate into a clear error of law. *Dodge*, 796 F.Supp. at 830. A motion for reconsideration is not a tool to relitigate and reargue issues which have already been considered and disposed of by the court. *Id.* Instead, a motion for reconsideration is appropriate where the court has patently misunderstood a party or where there has been a significant change in the law or facts since the court originally ruled on the

---

8. Costs were to be paid in accordance with the terms of the settlement agreements entered into between plaintiff and defendants. Each settling defendant was to pay fifty percent of the costs ($81,226.70).

issue. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983).

 It is well-established that the selection of the manner in which reasonable attorneys' fees are awarded to a party is vested within the sound discretion of the district court. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In class action settlements, a district court may exercise its discretion in selecting either the lodestar method or the percentage of the common settlement fund method. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 821 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *see also Johnston v. Comerica Mortgage Corp.,* 83 F.3d 241, 246 (8th Cir.1996) (finding that the decision whether to use the percentage method or the lodestar method is within the district court's discretion). Although class counsel complains that the decision to use the lodestar approach was improper, class counsel has failed to cite to any case law which was not already raised and considered in the November 8th decision. Given that a district court is vested with discretion in selecting the method through which attorneys' fees are awarded, class counsel's request for reconsideration of the decision to use the lodestar approach will be denied.

Although class counsel has failed to raise any new arguments which were not already considered, several assertions in class counsel's supporting brief warrant a brief response. First, class counsel contends that I made a factual error when I determined that the value of the settlement fund was "hypothetical." To this extent, class counsel asserts that hypothetical means "speculative" and "imaginary" whereas the alleged value of the settlement in this case could be determined through a mathematic formula.

(Class Counsel's Supp.Brf. (Dkt. Entry 453) at 3 n. 2.) It is class counsel, however, who has misapprehended the meaning of the word hypothetical, which actually means assumed or conditional. *Webster's Third New International Dictionary* 1117 (1993). In the context of this case, class counsel's calculation of the common fund was premised upon an assumption—namely that there would be a 100% response rate by the plaintiff class. By definition, therefore, its valuation was hypothetical. The unreasonableness of this assumption was illuminated by the resulting number of claims which were actually asserted in this case.[9] Although class counsel could present a hypothetical common fund value based upon certain assumptions and conditions, the *true* value of the settlement is difficult to evaluate. Class counsel simply fails to recognize that there is a difference between the "potential" value of a settlement as compared to the "actual" value of the settlement.

Class counsel incorrectly contends that Darling did not dispute that the value of the settlements totaled $9.4 million. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 3–4.) Admittedly, Darling did not object to the hypothetical calculation of a potential figure for the value of a settlement with an assumed 100% response rate. Darling did, however, object to the use of such a figure as a component of the common fund from which class counsel's fees could be determined. To this extent, Darling advocated that the true value of the settlement was only around $400,000— the amount that was actually paid out on verified claims. Although class counsel correctly notes that Darling did not object to class counsel's hypothetical calculation of the settlement fund, class counsel has inappropriately suggested that Darling's failure to object to this figure denotes an acceptance of the figure for the purposes of a fee award. Such a suggestion is meritless.[10]

---

**9.** To this extent, the parties knew that response rates would be low because there were very few claims asserted in the aborted Moyer settlement. Therefore, class counsel was aware, as was counsel for Darling and Moyer, that the true value of this settlement would be substantially below the hypothetical value. In fact, one could argue that the anticipated low response rate was the stimulus for defendants to settle.

**10.** Incredibly, class counsel also suggests that the defendants' liability was not contingent upon the class response rate. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 6.) Liability was completely contingent upon presentation of verifiable claims. As suggested above, apparently Darling and Moyer were motivated to settle this matter because both understood that the number of verifiable claims would be low. It is not surprising,

Class counsel also cites a portion of *Newberg on Class Actions* relating to "formula settlements," in which *Newberg* states that such formula settlements are desirable because: "The issue of the plaintiff's attorneys' fees and expenses can be separated from the class damage consideration, though it is now settled that class counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members." 2 *Newberg on Class Actions* § 1.18 (3d Ed.1992). Class counsel neglected to reproduce the portion of the quote which relates to the separation of attorneys' fees from the class damage consideration. In essence, the parties accomplished such a settlement in this case.

 Although *Newberg* recognizes that class counsel "may" seek a fee award based on the total benefit to the class, the operative word is "may." *Newberg*, however, does not suggest that a court lacks discretion to determine whether the presumptively reasonable lodestar approach should be applied where, as here, the common fund approach does not yield a reasonable fee. Indeed, where the settlement fund has only a hypothetical value—as opposed to a fund paid into escrow or some other account—then the use of the common fund approach is problematic.[11]

Class counsel argues at great length that they are somehow being "penalized" because class members only submitted verified claims of $400,000. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 7–8.) Given that the lodestar approach results in a presumptively reasonable result, the decision to utilize the lodestar approach cannot be seen as a "penalty." Class counsel is receiving the full value for any compensable hours which were expended in this matter. Despite class counsel's accusation of the imposition of a "penalty," the decision to utilize the lodestar approach simply insures that class counsel does not receive a windfall. Although class counsel has done a commendable job in litigating this action, the mere fact that class counsel will not receive compensation in excess of ten times the actual amount of claims paid does not constitute a "penalty." Class counsel's suggestion that they will be "penalized" if they do not receive compensation well in excess of the hours reasonably expended in this action is not only meritless but it is also demonstrative of an avaricious attitude that brings disrepute to the legal profession.

Finally, class counsel has also failed to demonstrate that the refusal to apply a lodestar multiplier was a clear error of law. As noted in the November 8th decision, the

therefore, that only $500,000 in claims were submitted, from which only $400,000 were actually verified and paid. Class counsel's suggestion that the defendants' liability was not contingent upon the number of claims filed is baseless.

11. *Newberg* relied upon *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), for the proposition that class counsel may claim a percentage of the common fund regardless of the number of actual claims filed. That case, however, involved a situation in which a specific amount of money was actually placed into the common fund. In comparison, there was no money placed in an escrow account in this case. Instead, Darling and Moyer essentially pledged a security against any claims that were eventually made and documented. In this regard, *Boeing* explicitly observed that "we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." *Id.* at 479 n. 5, 100 S.Ct. at 750 n. 5. Given that *Boeing* is inapplicable to the facts

presented in this case, *Newberg's* comments should be given little weight.

Class counsel also relies upon *Boeing* for the proposition that all class members have an equitable obligation to share in the litigation expenses. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 7 n. 6.) As noted above, *Boeing* is simply inapplicable to the facts presented in this case. There has been no lump sum paid into a common fund from which counsel's fees could be obtained. As this is not a true common fund case, neither non-claiming nor claiming class members share in the fee payment. As *Newberg* suggests, a formula settlement such as this *separates* the issue of attorneys' fees and class damages. 2 *Newberg on Class Actions* § 11.18 (3d Ed.1992). In their settlement in this case, the parties clearly envisioned a division of payments to the class for damages and attorneys' fees. To this extent, Moyer agreed to pay not only verifiable claims, but also an additional $1 million for attorneys fees—separate and distinct from the claims asserted by class members. Class counsel's continued suggestion that a common fund existed from which attorneys' fees were to be drawn simply ignores the realities of this unique settlement.

Third Circuit has determined that multipliers are not permissible regardless of whether it is a fee-shifting case or not. *General Motors*, 55 F.3d at 822. Class counsel contends that the Third Circuit's statement regarding the inapplicability of lodestar multipliers was dicta and not binding. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 20.) The Third Circuit explicitly stated: "The Supreme Court, however, has rejected the use of multipliers to enhance the lodestar's hourly rate amount." *General Motors*, 55 F.3d at 822 (citing *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).[12] Class counsel has failed to cite a single decision in this Circuit which would suggest that *General Motors* prohibition against the use of a lodestar multiplier is dicta. On the other hand, several courts have followed *General Motors. See, e.g., Pozzi v. Smith*, 952 F.Supp. 218, 226 n. 5 (E.D.Pa.1997); *Lake v, First Nationwide Bank*, 900 F.Supp. 726 (E.D.Pa.1995). As such, class counsel's request for reconsideration of the decision not to use a lodestar risk multiplier will be denied.

## B. Fee Calculation

### (1) Class Counsel's Fees

Using 1995 hourly rates, the value of all time expended in this matter by class counsel is $2,889,161.25, with the fee breakdown by firm as follows:

| | |
|---|---|
| Bernard Gross, P.C. ("BG") | $2,509,568.25 |
| Chariton & Keiser ("C & K") | $287,475.50 |
| Rosenn, Jenkins & Greenwald ("RJ & K") | $92,117.50 |

Of this amount, $2,226,676 in time was expended prior to July of 1993, by which time Standard Tallow and Isacs had extricated themselves from this litigation. This amount, therefore, included time expended in connection with the unsuccessful pursuit of claims against Standard Tallow and Isacs. Accordingly, the first issue to be decided in

calculating a fee award in this case on the basis of the lodestar approach is what amount, if any, should be excluded because Isacs was dismissed for want of personal jurisdiction and Standard Tallow prevailed on a summary judgment motion.

 It is well-established that hours expended with respect to defendants who have been dismissed from an action are generally not compensable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir.1990); *see also Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1044 (3d Cir.1996) (stating that a court must deduct hours spent on claims that are "distinct in all respects from" the successful claims); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir.1978); *Hall v. Harleysville Ins. Co.*, 943 F.Supp. 536, 542 (E.D.Pa.1996) (holding that a court must deduct time exclusively devoted to the defendants without liability); *Finch v. Hercules Inc.*, 941 F.Supp. 1395, 1424 (D.Del.1996) (finding that the court must reduce attorneys' fees by the hours devoted exclusively to unsuccessful claims). As noted by class counsel, however, a moving party may receive compensation for time spent on defendants who are found not liable if the moving party demonstrates that its hours were "fairly devoted" to the claims asserted against all defendants. *Rode*, 892 F.2d at 1185. Only where the claims arise from common facts and legal theories will hours spent on unsuccessful claims be compensable. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 439, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983); *West Virginia Univ. Hosps. v. Casey*, 898 F.2d 357, 361 (3d Cir. 1990) ("One useful starting point for separating an unrelated, unsuccessful claim from a related unsuccessful claim is to determine whether a particular unsuccessful claim

---

**12.** If this statement was dicta, it is incredible that the Third Circuit repeated it on several occasions in the course of its opinion. *Id.* at 804 ("Although the Supreme Court clearly invalidated the use of multipliers in lodestar awards in 1992 . . ."); *id.* at 810 n. 27 ("[C]ounsel did not even object when the district court applied a multiplier notwithstanding clear Supreme Court precedent invalidating the use of multipliers."). It

would not be appropriate for a district court to ignore the Third Circuit's repeated statements regarding the inapplicability of lodestar multipliers. If class counsel believes that the Third Circuit intended its words to have no meaning, then class counsel will have to argue to the Third Circuit that its statements in *General Motors* are meaningless.

shows a 'common core of facts' with the successful claim or is based on related legal theory."). Further, the Third Circuit has made clear that related claims are to be broadly interpreted. *West Virginia Univ. Hosps.*, 898 F.2d at 362. A party seeking fees, however, bears the burden of demonstrating that hours were "fairly devoted" to the liable defendants and must keep careful billing records such that a court can identify the hours spent on unsuccessful claims. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Hall*, 943 F.Supp. at 542; *Coalition to Save Our Children v. State Bd. of Educ.*, 901 F.Supp. 824, 829 (D.Del.1995).

In a similar case, *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir.1978), a plaintiff brought suit against five defendants, alleging a conspiracy to blacklist him from employment in violation of antitrust laws. *Id.* at 1210. Two of the defendants were found not liable—one on a motion for a directed verdict and the other one after trial. *Id.* at 1215. Two other defendants settled with plaintiff prior to the second trial. The remaining defendant, Wilson Freight Forwarding, was found liable after a second trial. In calculating the fee to be awarded plaintiff's counsel, the trial court had not attempted to exclude those hours that were attributable to the claims against the defendants who had prevailed at the first trial. In remanding the case for recalculation of the fee award, the Third Circuit instructed the district court to exclude such hours, explaining:

> [W]e believe it incorrect for the district court not to have excluded the hours devoted to the case against Braunns and National Freight. No recovery whatsoever was had against those defendants. Indeed, the case against Braunns was not substantial enough to reach the jury. We see no reason why Wilson should be required to compensate plaintiffs attorneys for any portion of the time devoted to the case against these defendants. Accordingly, in recalculating the number of hours reasonably devoted to the case against Wilson, the district court should exclude those hours exclusively devoted to the prosecution of the case against all four of the other defendants.

We recognize, of course, that legal services fairly devoted to the (case against Wilson) are compensable even though those very same legal services also supported the prosecution of the case against the other four defendants. For example, it was necessary to establish the existence of a conspiracy in order to establish Wilson's liability as a member of the conspiracy, and proof of the conspiracy may have required evidence concerning the activities of the other defendants. Such hours devoted in part to the case against other defendants may be fairly charged to Wilson, *so long as the plaintiff can establish that such hours were fairly devoted to the prosecution of the claims against Wilson.*

Moreover, we believe that the district court erred in simply allocating the hours among the various defendants in proportion to their number. "There is no necessary percentage relationship between the number of (parties sued) and the lawyer time spent on each." *Accordingly, the district court should analyze the hours claimed by plaintiff to determine which hours were fairly devoted to the claim against Wilson only.* Without such analysis, there is no basis to say that one-third or one-fifth or some other fraction of the total hours incurred should be charged to Wilson. *We emphasize that plaintiff bears the burden of proving what hours were devoted to such claim.*

\* \* \* \* \* \*

Upon remand, then, the district court must recalculate the number of hours to be charged against Wilson by determining how much time was fairly devoted to proving the antitrust claim against Wilson only....

We emphasize that plaintiff as fee-petitioner bears the burden of persuasion on remand to show how many hours were reasonably devoted to the case against Wilson. It thus must present specific evidence of the hours incurred in order to provide sufficient information for the district court to evaluate the claimed hours. *Id.* at 1215–16 (citations omitted) (footnote omitted) (emphasis added).

According to *Baughman,* class counsel's billing records must be scrutinized to determine what hours were fairly expended on the claims against Moyer and Darling only. Although time devoted to Standard Tallow and Isacs may be compensable, it is class counsel's obligation to establish that such hours may be charged against Moyer and Darling. In other words, class counsel bears the burden of showing how many hours were reasonably devoted to the claims against Moyer and Darling.

Predictably, Darling contends that all billing hours that identify only Standard Tallow and Isacs are not compensable and must be deducted from any fee award.[13] To this extent, Darling accepts class counsel's calculation of fees for billing record entries that related only to Standard Tallow and Isacs. The value of these time entries is $254,495. (Darling's Opp. Brf. (Dkt. Entry 456) at 3.)[14] Under Darling's approach, class counsel fees directly allocable to Standard Tallow and Isacs ($254,495) are subtracted from the total fees ($2,889,160) to yield a "base amount" of $2,634,665. Darling then reduces this "base amount" by 30% to reflect hours expended by class counsel attributable to the claims against Standard Tallow and Isacs but not specifically designated as such on class counsel's time records. Darling thus asks that the fee award be limited to $1,844,265.[15]

The 30% reduction proposed by Darling was premised on the fact that of the three defendants against whom this case was pursued through discovery,[16] summary judgment was entered in favor of Standard Tallow. Darling, however, fails to recognize that the Third Circuit has cautioned courts against simply taking a ratio of claims dismissed to claims asserted approach. *See Baughman,* 583 F.2d at 1215; *see also Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1190 (3d Cir.1995) ("A simple mathematical reduction based solely on the ratio of successful to unsuccessful issues is, however, precluded by *Hensley.*"). Thus, Darling's approach, which does not reflect any analysis of the billing record, cannot serve as the basis upon which to determine a fee award. Rather, the billing records submitted by class counsel must be scrutinized to determine the extent to which class counsel has demonstrated that its hours were "fairly devoted" to the claims against Darling and Moyer.[17]

As noted earlier, class counsel has provided billing records reflecting entries that listed only Standard Tallow and Isacs claims. (Dkt. Entry 453, Exhibit E.) The combined total for entries that identified only Standard Tallow and Isacs is $254,495. With respect to Standard Tallow, billing record entries of

---

13. A number of billing record entries referenced only Standard Tallow (*e.g.,* analyze Standard Tallow phone records) or only Isacs (*e.g.,* draft reply to Isacs' Rule 12 motion to dismiss).

14. Attached as Exhibit "E" to class counsel's response to the November 8th opinion are affidavits of members of the class counsel firms supported by billing records that reported expenditure of time for matters pertaining only to Standard Tallow or Isacs. (Billing Records and Affidavits (Dkt. Entry 453) Exhibit E.) To this extent, BG documents that 1,067 hours were spent on entries that identified only Standard Tallow or Isacs, resulting in fees of $245,272.50. (*Id.*) The law firm of C & K provided billing records with entries of 17.5 hours identifying only Standard Tallow or Isacs, resulting in fees of $4,112.50. (*Id.*) Finally, the law firm of RJ & G documented that 29.9 hours were spent on work that identified only Standard Tallow or Isacs, resulting in fees of $5,100. (*Id.*)

15. Darling, however, objects to any fee award above the $1 million Moyer agreed to pay, re-

serving its right to appeal any award in excess of that amount. (Darling's Opp.Brf. (Dkt. Entry 456) at 5 n. 9.)

16. As noted above, Isacs was dismissed for lack of personal jurisdiction.

17. There is another fundamental problem with Darling's application of its percentage reduction: Darling proposed an across-the-board reduction to *all* of class counsel's fees. (Darling's Opp.Brf. (Dkt. Entry 456) at 4.) Darling never attempted to allocate the hours based on whether they were expended before or after the dismissal of Standard Tallow. Instead, Darling advocated that application of the thirty percent reduction to the hours expended after July, 1993, when both Standard Tallow and Isacs were no longer parties to this action. The percentage reduction of the unallocable fees represents a deduction for the hours expended pursuing the claims against Standard Tallow and Isacs. The application of this percentage to a time period when Standard Tallow and Isacs were no longer parties would thus be improper.

BG total $183,737.50; of C & K, $2,514.50; and of RJ & G, $4,345.[18] Thus, the value of the time entries identifying only Standard Tallow is $190,597. With respect to Isacs, billing record entries of BG total $61,535; of C & K, $1,598; and of RJ & K, $765. Thus, the value of time entries identifying only Isacs is $63,898.

Of this amount, class counsel concedes that time expended in connection with Isacs motion to dismiss is not compensable. According to class counsel, the value of this time is $36,500.50. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 18.) Accordingly, $36,500.50 will be excluded from the fee application on the ground that the time records indicate that these hours were expended exclusively pursuing the potential liability of Isacs.

■■■ Class counsel contends that the balance of the value for time entries pertaining to matters involving only Standard Tallow and Isacs ($217,994.50) is fully compensable. As class counsel properly notes, the claims against Standard Tallow and Isacs did involve the same legal theories as the claims against Darling and Moyer. Further, certain discovery concerning Standard Tallow and Isacs was undoubtedly necessary in pursuing the successful claims against Darling and Moyer. (Class Counsel's Supp.Brf. (Dkt. Entry 453) at 15.) Standard Tallow documents were used in the depositions of employees of Darling and Moyer, and class counsel intended to call at trial five Standard Tallow employees and three Isacs employees as witnesses, along with using various Standard documents as exhibits. (id.) Class counsel also designated all five of the Standard Tallow depositions to be read into the record at trial. (Id.)

On the other hand, class counsel undoubtedly expended considerable effort in unsuccessfully attempting to link Standard Tallow to the conspiracy. For example, discovery was indeed undertaken to maintain the claim against Standard Tallow. Class counsel also devoted substantial time to contest Standard Tallow's summary judgment motion. Simi-

larly, not all the time reported on matters pertaining to Isacs could fairly be attributed to the settling defendants. Indeed, an independent review of the records of C & K and RJ & G compels the conclusion that none of their entries for matters pertaining to Isacs (having a value of $2,363) should be included in the fee calculation. Under these circumstances, it is untenable for class counsel to insist on being compensated for the entire time allocable to Standard Tallow matters and all time for matters pertaining to Isacs that did not concern the personal jurisdiction issue.

As noted above, class counsel shoulders the burden of proving what hours were devoted only to the claims against the liable defendants. *Baughman,* 583 F.2d at 1215. Class counsel's billing records, however, are too general to make this assessment insofar as entries for hours expended on matters pertaining only to Standard Tallow and Isacs are concerned. For example, there are many entries that simply state "review Standard documents," or "chart and review Standard's phone bills," or "sales analysis Standard Tallow." Such conclusory descriptions of services rendered do not permit a conclusion that such efforts assisted class counsel insofar as Moyer and Darling were concerned. Nor, with one exception, does class counsel's submissions in response to this Court's November 8, 1996 Order permit an allocation of time between matters that concerned Standard Tallow and Isacs, on the one hand, and all defendants, on the other. For example, while class counsel asserts that some Standard Tallow documents were used in depositions of Moyer and Darling personnel, class counsel does not provide a rational basis for the assertion that *all* entries that pertain only to Standard Tallow or Isacs should be compensable. Indeed, there are entries that should not be compensable, such as time expended in connection with executing a settlement agreement with Standard Tallow.

18. The affidavit of Warren Rubin, Esquire, provided the total value of time for entries concerning only Standard Tallow. The value of time expended by C & K as well as RJ & G were derived by subtracting from the combined hours for the entries concerning Standard Tallow and Isacs those entries that concern only Isacs.

The one exception to this general failure of proof on class counsel's part concerns the fact that the depositions of Five Standard Tallow employees and the exhibits thereto were designated for use at trial against Moyer and Darling. An independent review of the billing records indicates that the value of hours expended to prepare for and take the depositions of five Standard Tallow employees is $25,473.75.

In short, class counsel has generally failed to show that the time entries for matters pertaining only to Standard Tallow and Isacs also concerned the liability of Darling or Moyer. Nor has class counsel suggested some reasonable basis for allocating these time entries between compensable and noncompensable matters. Accordingly, class counsel's request for compensation for the balance of the time entries pertaining to matters involving only Standard Tallow and Isacs (having a value of $217,994.50) will be granted only in the amount of $25,473.75, the time expended in connection with the Standard Tallow depositions that were to have been used at trial.

The other components of class counsel's time expended in this matter are (1) time entries prior to July of 1993 and allocable to Moyer and Darling; (2) time entries after July of 1993, and thus necessarily allocable exclusively to Moyer and Darling; and (3) time entries prior to July of 1993, the descriptions of which do not permit a conclusion that the services concerned (a) only Standard Tallow and/or Isacs, (b) only Darling and/or Moyer, or (c) all defendants.

Independent review of the time records indicates that the value of the hours that identified either Darling or Moyer is $296,-152.25.[19] This amount is fully compensable. The value of time expended since July, 1993 is $662,484.25, and this amount is likewise fully compensable.

The value of the time in the third category, time entries not allocated to a particular defendant prior to July, 1993, is $1,676,-028.75. This amount plainly includes the val-

ue of time expended pertaining to Standard Tallow and/or Isacs. For example, while class counsel was required to respond to Standard Tallow's summary judgment motion and pursued the issue of Standard Tallow's liability in the Third Circuit, counsel's billing records fail to reflect a specific allocation of hours to these matters.

As noted earlier, the party seeking a fee award bears the burden of demonstrating that hours expended on unsuccessful claims were "fairly devoted" to the successful claims in order that such hours may be compensable. *See Baughman*, 583 F.2d at 1215 ("We emphasize that plaintiff bears the burden of proving what hours were devoted to such claim."); *Hall*, 943 F.Supp. at 544 (finding that any hours which were not properly identified as expended for a successful claim must be excluded). In this regard, the party seeking a fee award must keep careful records in a manner that allows a reviewing court to identify the distinct claims and defendants. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Although class counsel has managed to specifically identify some of its hours, the majority of the hours expended from 1985 through July, 1993 are unallocable.

■ Class Counsel's fee petition presents a difficult quandary. On the one hand, the Third Circuit has cautioned district courts that percentage reductions of attorneys' fees based *solely* upon the ratio between successful and unsuccessful claims must be avoided. *Baughman*, 583 F.2d at 1215. Rather, the Third Circuit requires a district court to review class counsel's billing records to determine which hours were "fairly devoted" to the successful claims. *Id.; Daggett v. Kimmelman*, 811 F.2d 793, 797 (3d Cir.1987) ("In particular, this Court has held that trial judges may not, in a perfunctory fashion, order blanket percentage reductions without thoroughly probing the record and noting their reasons with care and specificity."). Class counsel in this case has failed to specifically describe services rendered for the vast majority of their hours in a manner that

---

**19.** Class counsel's billing records, which were presented as Exhibit 4 at the settlement hearing, will be separately docketed. In allocating time between the defendants, an "X" was used to

designate entries that specifically referenced Darling and Moyer, while a check mark was used to designate entries that specifically referenced Standard Tallow and Isacs.

allows an allocation of hours between successful and unsuccessful claims. On the other hand, it is also clear that the legal theories utilized against Darling and Moyer were the same theories which were advanced against Standard Tallow and Isacs. Despite class counsel's failures to properly maintain their records, it would be unfair to refuse to compensate class counsel for all of the unallocable hours. Still, it would also be unfair to allow class counsel to require Darling and Moyer to pay for hours expended on the unsuccessful claims against Standard Tallow and Isacs which have been hidden from court review in the unallocable hours.

Although percentage reductions are generally discouraged, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from the fee application.'" *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)); see also *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir.1994). Whenever a district court utilizes a percentage reduction approach, it must conduct a review of the billing records and provide an explanation for its decision to make the percentage adjustment. *Loranger,* 10 F.3d at 783; *Gates,* 987 F.2d at 1400. Although the Third Circuit has cautioned against the use of such percentage reductions, it has permitted such percentage reductions where the district court reviewed the billing records and provided reasoning for its percentage reduction. *Daggett,* 811 F.2d at 797 (approving a 10% across-the-board reduction because the billing records contained duplicative work). Indeed, our Court of Appeals itself has used a percentage approach to reduce the lodestar to reflect unsuccessful claims where, as here, the billing records were too general to permit a precise allocation of counsel's efforts. *See, e.g., West Virginia Univ. Hosps. v. Casey,* 898 F.2d 357 (3d Cir.1990) (fees reduced by 15% to account for discrete unsuccessful claim). Moreover, it has recognized a district court's

discretionary authority to make "a general reduction of the lodestar" to account for unsuccessful claims. *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 925 (3d Cir.1985) (12.5% reduction affirmed). As explained in *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648 (3d Cir.1986), *vacated on other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987), "[w]hile it is clear that a district court must now consider the result-obtained factor, there is no 'precise rule or formula' for evaluating result obtained and the determination is a matter of district court discretion." *Id.* at 654. In *Black Grievance Committee,* the Third Circuit affirmed a 25% reduction based on the plaintiffs lack of success on some issues. *Id.*

Unfortunately, class counsel has not suggested any basis for making a general reduction in the lodestar to account for unsuccessful claims. Nor has class counsel indicated the number of hours they estimate to have expended in responding to Standard Tallow's summary judgment motion or any other matter that may fairly be allocable only to Standard Tallow. Class counsel has failed to propose any means through which the unallocable hours could be reduced to account for hours expended solely on the unsuccessful claims against Standard Tallow and Isacs. Despite class counsel's failure, a reduction to the unallocable hours must be made so that Darling and Moyer are not saddled with legal costs which are attributed solely to the claims against Standard Tallow and Isacs.

It is evident that Standard Tallow's status as a party required expenditure of time that would not otherwise have been incurred. For example, Standard Tallow moved for summary judgment, requiring class counsel to respond in both the district court and appellate court. Moreover, class counsel was required to pursue discovery to establish Standard Tallow's status as a co-conspirator, an effort that was unsuccessful. Of the billing record entries that can be allocated to, on the one hand, Standard Tallow or Isacs, and, on the other hand, Moyer or Darling, the hours allocable to the former represent 46%

of the aggregate.[20] Of all hours expended prior to July, 1993, the non-compensable hours concerning Standard Tallow and/or Isacs represents 10.3% of the aggregate.[21] The billing record entries identifying only Moyer and Darling, however, represent only 13.3% of the aggregate.[22] Thus, more than 75% of the time expended before July of 1993 cannot be specifically allocated to any particular defendant. In light of the fact that class counsel was pursuing a common theory against all defendants, a pro rata reduction of one-half or even one-third would not be appropriate. But a substantial reduction is nonetheless warranted. Having carefully considered the billing records and the course of this protracted litigation, I believe that a 20% discount of the unallocable hours is warranted. Such a percentage fairly assures the settling defendants that they are not compensating class counsel for the pursuit of meritless claims while at the same time fairly assuring class counsel of reasonable compensation. A 20% reduction of the unallocable hours (having a value of $1,676,028.75) yields compensation to class counsel of $1,340,823 for the unallocable hours recorded prior to July of 1993. When this figure is added to the other compensable hours, the resulting sum is $2,324,933.[23]

---

**20.** This percentage equals the total unrecoverable allocable fees for Standard Tallow and Isacs ($229,021.25) divided by the total allocable fees for all defendants ($550,647.25). One could argue that this ratio better represents the amount of time which was spent pursuing the claims against Standard Tallow and Isacs as it is based upon actual allocable billing hours between all of the defendants. A reduction of the unallocable hours by this ratio would be improper for several reasons. First, the percentage is simply too high. Even Darling proposed only a 30% reduction in unallocable hours, based upon Standard Tallow being one of three defendants. It would not be proper to reduce class counsel's award in excess of the ratio proposed by Darling. Further, it has already been noted that common legal theories exist against all of the defendants. Therefore, class counsel should be permitted to recover for time which can be fairly attributed to the claims against Darling and Moyer. Of course, the problem is the manner in which a fair ratio is determined. Given the commonality between the legal claims asserted in this matter, a 46% reduction in unallocable fees would be inappropriate.

**21.** This percentage equals the total unrecoverable allocable fees for Standard Tallow and Isacs ($229,021.25) divided by the value of all hours expended prior to July, 1993 ($2,226,676).

**22.** This percentage equals the total allocable fees of Darling and Moyer ($296,152.25) divided by the value of the total hours expended prior to July, 1993 ($2,226,676).

**23.** Regardless of the method of recovery utilized, the Third Circuit has suggested that "a court can use the lodestar method to confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate; similarly, the percentage of recovery method can be used to assure that counsel's fee does not dwarf class recovery." *General Motors*, 55 F.3d at 821 n. 40. Thus, it is appropriate to briefly address the amount of fees which would have been awarded under the percentage of recovery approach. No general rule exists for determining the appropriate percentage. Fee awards have ranged from fifteen to forty-five percent of the settlement fund. *Weiss v. Mercedes–Benz of North Am., Inc.*, 899 F.Supp. 1297, 1304 (D.N.J.1995); *In re SmithKline Beckman Corp. Secs. Litig.*, 751 F.Supp. 525, 533 (E.D.Pa.1990); *see also Sala v. National R.R. Passenger Corp.*, 128 F.R.D. 210, 212 (E.D.Pa.1989); *In re TSO Fin. Litig.*, No. 87–8302, 1989 WL 80316 (E.D.Pa. July 17, 1989). It has been noted that "the normal range [for attorneys' fees in] common fund securities and antitrust suits is between 20 and 30 percent." *In re GNC Shareholder Litig.*, 668 F.Supp. 450, 452 (W.D.Pa.1987).

Class counsel's suggested one-third percentage of the common fund is simply too high. There are many reasons that this figure is too high. First, Isacs was dismissed from this action for lack of personal jurisdiction. Second, Standard Tallow successfully moved for summary judgment. Even against the remaining defendants, class counsel did not have a strong case. At least one district court judge determined that class counsel had failed to meet their burden of proof on the summary judgment record. Although this decision was reversed by the Third Circuit, it still demonstrates the weakness of class counsel's position. Further, given that I supervised the settlement of this matter, I know that class counsel was forced to concede greatly in order to settle this case. For example, class counsel originally demanded a payment of $6 million dollars into an actual settlement fund. Darling and Moyer refused such a demand and advocated the formula settlement. Despite the knowledge that such a settlement would yield a small recovery, class counsel constructed a unique settlement that assured that some of the class members would receive a benefit. This settlement, however, ultimately yielded an actual benefit to the class of only $400,000. A one-third percentage would not reflect the weaknesses of class counsel's case.

On the other hand, class counsel is correct in noting that this was a difficult case. Class counsel successfully appealed an award of summary judgment and pursued the interests of the class

Finally, the fee application has been scrutinized to exclude hours which were not reasonably expended. (Dkt. Entry 448, at 22.) Darling has failed to identify any hours which it feels have not been reasonably expended. (Darling's Opp.Brf. (Dkt. Entry 456) at 4–5.) Further, two expert witnesses testified that the fees expended by class counsel in this case were reasonable—even low considering the difficult legal issues and the length of the litigation. (Transcript of Settlement Hearing (Dkt. Entry 438) at 20, 38.) Finally, an independent review of the billing records yields the conclusion that the hours expended and the fees charged by class counsel were reasonable.

As indicated in the November decision class counsel will be awarded interest on the fee award from the date of the Court-approved settlement, December 20, 1995. (Dkt. Entry 448, at 22.) As of July 17, 1997, the rate of post-judgment interest was 5.56%. Thus, for the time period from December 20, 1995 until August 18, 1997, the interest on the fee award amounts to $214,617. Thus, the final fee award to class counsel with accrued interest through August 18, 1997 is $2,539,550.

To recap, the class counsel fee award has the following components:

1. Billing record entries since July of 1993 $662,484.00

2. Pre–July 1993 billing record entries for matters pertaining to Darling and Moyer $296,152.25

3. Compensable Pre–July 1993 billing records entries for matters pertaining to Standard Tallow and Isacs $25,473.75

4. Pre–July 1993 unallocable billing entries, reduced by 20% $1,340,823.00

Total Fee Award $2,324,933.00

Interest from 12/20/95 until 8/18/97 $219,992.00

Final Total Fee Award: $2,544,925.00

**(2) Objector Robzens' Attorneys' Fees**

In the November 8th opinion, it was determined that Robzens would "be awarded reasonable fees according to the lodestar approach with no multiplier." (Dkt. Entry 448, at 4 n. 4.) Further, I noted that the exact amount of the fees would be determined at a later date. (*Id.*) Therefore, I must also determine the amount of fees which will be awarded to Robzens.

The parties have challenged Robzens right to receive fees which are attributable to its application for a fee award. In a "common fund" case, attorneys are not entitled to compensation for hours expended in the pursuit of fee reimbursement because such hours do not benefit the class; rather, the award of attorneys' fees from a common fund actually depletes the fund from which the class receives its benefit. *See Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir.1979); *see also Mautner v. Hirsch*, 32 F.3d 37, 39 (2d Cir.1994); *United States v. 110–118 Riverside Tenants Corp.*, 5 F.3d 645, 646–47 (2d Cir.1993). Where there is no common fund such that a fee award will not be paid from a plaintiffs recovery and the attorney has conferred a benefit upon the class, then hours expended in connection with a fee application are compensable. *See Pawlak v. Greenawalt*, 713 F.2d 972, 982–84 (3d Cir.1983), *cert.*

admirably. To this extent, class counsel must be compensated for the years of litigation which were spent pursuing class claims. Given these considerations, I find that a twenty percent award from the common fund would be appropriate. This figure falls within the acceptable range utilized by other courts which have considered similar awards in difficult litigations.

Under class counsel's hypothetical settlement valuation approach, the common fund represents a combination of the value of the settlement to the class *and* the amount of attorneys' fees awarded. The settlement value of class claims

thus represents only 80% of the value of the common fund because the other 20% of the common fund is attributable to attorneys' fees. In order to determine the actual value of the common fund, one must divide $9.4 million by .80, which results in a figure of $11.74 million. Thus, class counsel would have been awarded 20% of this common fund, or 2.35 million. The lodestar method followed here results in a fee of $2,324,933. It is thus evident that the fee award is reasonable in relation to a reasonable percentage of the purported common fund. *General Motors*, 55 F.3d at 821 n. 40.

*denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Bagby,* 606 F.2d at 415; *see also Mautner,* 32 F.3d at 39; *Kinney v. International Bhd. of Elec. Workers,* 939 F.2d 690, 692–94 (9th Cir.1991). As noted in the November 8th opinion, Robzens has conferred a benefit upon the class. Further, there is no common fund established. An award of attorneys' fees in this case will not deplete or lessen the recovery of any class member. The rationale which prohibits an award of hours expended in relation to a fee application is not pertinent to this matter. Therefore, Robzens will be awarded a reasonable fee for its efforts in relation to the fee application.

Robzens, however, will only be compensated for hours which were expended in a manner that benefited that class as a whole. In this regard, a review of Robzens' billing records demonstrates that many of the hours pertain to Robzens fee application—not to Robzens' efforts in objecting to the proposed Moyer settlement. Although Robzens should be rewarded for its efforts which benefited the class, such efforts do not entitle it to a windfall. To this extent, Robzens will be awarded the following fees and disbursements:[24]

1. Billing Invoice – 2/14/95
 11/29/94 through 1/9/95 $6,510.50

2. Disbursements
 11/29/94 through 1/9/95 $468.33

3. Billing Invoice – 4/13/95

 1/9/95 through 3/14/95 $1,507.50

4. Disbursements
 1/9/95 through 3/14/95 $400.32

5. Billing Invoice – 8/24/95
 3/8/95 through 6/23/95 $752.50

6. Billing Invoice – 11/14/95
 10/11/95 through 11/10/95 $738.50

 Total Fees: $9,509.00

 Total Disbursements: $868.65

 Total Award: $10,377.65

 Interest from 12/20/95 $1,186.00

 Final Fee Award: $11,563.65

Essentially, the time period from November, 1994 through January, 1995, represents Robzens' efforts in objecting the Moyer's proposed settlement. Therefore, Robzens has been fully compensated for these efforts. After January, 1995, Robzens efforts were more focused upon settlement talks and other activities which did not benefit the class as a whole. Further, Robzens also began extensive efforts to obtain attorneys' fees for its part in objecting to the proposed Moyer settlement. Even a cursory review of the submitted billing records demonstrates that counsel for Robzens spent an inordinate amount of time pursuing the application for fees.[25] As such, much of the time devoted to such matters has been excluded from the fee application as either excessive, redundant, duplicative and/or unreasonable.

**24.** The following figures are taken from the billing records of the law firm of Cozen and O'Connor, which were provided in support of the motion for attorneys' fees. (Lang Affidavit (Dkt. Entry 409) Exhibit A.) Counsel for Robzens also provided a supplemental affidavit in support of its motion for attorneys' fees (Dkt. Entry 428.) After review of the billing records provided in this supplemental affidavit, I am convinced that none of these activities benefited the class. Further, in relation to the fee application, the hours expended were simply excessive, redundant and unreasonable. While Robzens will receive counsel fees for some of its efforts to obtain attorneys' fees, such hours must be reasonable in relation to counsel's efforts in the case.

**25.** Unfortunately, the effort of Robzens' counsels appear to have been motivated by the hope that they could acquire their own piece of the alleged "common fund." To this extent, the lodestar method was abandoned in favor of a percentage of the recovery approach in which counsel advocated a 2% award of the common fund. Robzens' counsel, however, calculated that the value of the common fund was only $6.4 million, which would have translated into a fee award of roughly $128,000. (Robzens' Reply Brf. (Dkt. Entry 419) at 4.) Given that Robzens' counsel believed that they had found a pot of gold, it may have been understandable that they devoted such excessive hours to the pursuit of attorneys' fees, but it was not reasonable. Thus, counsel for Robzens will be compensated for a reasonable amount of time devoted to the fee application. But much like class counsel, Robzens' counsel will only receive a reasonable compensation without any additional windfall.

Class counsel, Darling, and Moyer have objected to having to pay Robzens' attorneys' fees. (Dkt. Entries 414, 416 & 417.) Darling correctly notes that Robzens objections were not in relation to any action on the part of Darling; rather, Robzens objected to the proposed settlement negotiated by class counsel and Moyer. (Darling's Opp.Brf. (Dkt. Entry 414).) On the other hand, Moyer argues that its liability for attorneys' fees was capped in the settlement agreement which provided that Moyer would pay the first $1 million in attorneys' fees and Darling would pay the remainder. (Moyer's Opp. Brf. (Dkt. Entry 416).) Finally, class counsel argues that they should be paid all of their fees before Robzens receives any compensation. (Class Counsel's Opp. Brf. (Dkt. Entry 417) at 10 n. 10.) Relying upon the settlement agreement, class counsel also asserts that Darling should pay any fee award that Robzens receives. (*Id.*)

Each argument has some merit. If this were a common fund case, the objector's fee award would simply come from the fund itself such that the class would ultimately bear the burden of compensating the objector. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 360 (N.D.Ga. 1993); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky.1987). In this unique formula settlement, there was no common fund established from which Robzens' fees might be drawn. It is undisputed that it was Moyer's original proposed settlement which prompted Robzens to object, but Moyer's settlement agreement shields it from liability above $1 million. Moyer agreed to contribute $1 million in fees to class counsel and the agreement did not address the liability of any party for the fees of Robzens. Further, it would not be fair to have Darling pay the fees that were not attributable to any action on its part. Given that Moyer's settlement agreement did not provide for liability to Robzens for attorneys' fees and it was the unfairness of Moyer's original proposed settlement which prompted Robzens' actions, fairness requires that class counsel absorb the Robzens' award from its recovery. That is, class counsel was in a position to negotiate responsibility for payment of Robzens' fees for services which benefitted the class.

Having agreed to cap Moyer's fee liability without any provision insofar as Robzens is concerned, class counsel should be held responsible for Robzens' counsel fees. Therefore, class counsel's award will be reduced by the amount of the award to Robzens. Moyer will be directed to pay Robzens $11,563.65 and to pay class counsel $988,436.35. Darling will be directed to pay class counsel $1,544,925.

## III. CONCLUSION

The United States Supreme Court has indicated that requests for attorneys' fees should not turn into a second major litigation. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Unfortunately, the request for fees in this case has erupted into a second major litigation. After careful review of the parties' positions, the lodestar approach was utilized to determine the presumptively reasonable award of attorneys' fees. To this extent, certain hours which were devoted to the unsuccessful claims against Standard Tallow and Isacs were excluded from the fee calculation.

It is also apparent that the legal theories asserted against all of the defendants share some common nucleus and that some of the Standard Tallow and Isacs discovery was necessary for the claims against Darling and Moyer. To this extent, class counsel has been permitted to recover some of the fees expended in preparing for and deposing certain Standard Tallow employees. Class counsel, however, has failed to properly identify their hours in a manner which would allow this Court to make allocation of specific hours. After review of the records, this Court was able to allocate some of the hours expended from 1985 through July, 1993 to particular defendants. The vast majority of those hours, however, were unallocable.

Because the claims against Standard Tallow and Isacs were unsuccessful, a 20% reduction was made to the unallocable hours to represent the amount of time spent litigating unsuccessful claims. Because Standard Tallow and Isacs were both removed from the action by July, 1993, class counsel was awarded full compensation for all hours spent

after July, 1993. Class counsel was awarded interest from December 20, 1995 until the date of this Order at an annual rate of 5.56%.

Robzens will also be awarded attorneys' fees and costs for its efforts which benefited the class and for its reasonable efforts in collecting its attorneys' fees. Class counsel will be required to absorb these fees.